IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| LAURA JOHNSTON FAMILY PROPERTIES, LTD., | § § § | |
| Plaintiff, | § § | No. 3:16-cv-03378-M |
| v. | § § | |
| ALLEN ENGINEERING CONTRACTOR, INC., | § § § § | |
| Defendant/Third-Party Plaintiff, | § § | |
| v. | § § | |
| TOM BENNETT, JR. and UNITED STATES INVENTION CORPORATION, | § § § § | |
| Third-Party Defendants. | § | |

**MEMORANDUM OPINION AND ORDER**

Before the Court are the Motion to Dismiss of Plaintiff Laura Johnston Family Properties, Ltd. ("LJFP") (ECF No. 34); the Motion to Dismiss of Third-Party Defendants Tom Bennett, Jr. and United States Invention Corporation ("Bennett/USIC") (ECF No. 46); and the Motion to Dismiss of Defendant/Third-Party Plaintiff Allen Engineering Contractor, Inc. ("Allen") (ECF No. 50). For the reasons stated below, LJFP's Motion to Dismiss is **GRANTED**; Bennett/USIC's Motion to Dismiss is **DENIED**; and Allen's Motion to Dismiss is **GRANTED**.

## I. Factual and Procedural Background

This case involves a dispute over two property easements. LJFP alleges it is the owner of real property located in Navarro County, Texas. (LJFP First Am. Pet. ¶ 2.1, ECF No. 23). Bennett/USIC[1] also allegedly owns real property in Navarro County. (*Id.* ¶ 1.3). Allen, a general contractor, claims it was retained to repair a railroad bridge at Chambers Creek in Navarro County. (*Id.*; *see also* Allen Countercl. ¶ 4, ECF No. 24). To access the railroad bridge, Allen alleges it entered into a Temporary Construction Easement ("TCE") with LJFP. (Allen Countercl. ¶ 5). The TCE entitled Allen to enter part of LJFP's land called the "Construction Area." (LJFP First Am. Pet. Ex. A). The TCE does not include a written description or definition of the "Construction Area," but instead refers to an image captured by Google Earth Pro, a copy of which is attached to the TCE. (*Id.*). LJFP's land and Bennett/USIC's land are designated on that image as is a red line which represents the "Proposed Access." (*Id.*). It is unclear from this image what area constitutes the "Construction Area." According to LJFP, the TCE required Allen to construct an access road, build a workspace on an adjacent landowner's property, and complete all construction activities by October 1, 2016. (*Id.* ¶ 2.2).

After signing the TCE, Allen claims it discovered it could not access the railroad bridge through the easement described in the TCE. (Allen Countercl. ¶ 7). As a result, Allen entered into a separate agreement with Bennett/USIC, denominated the Temporary Easement Agreement

---

[1] Allegedly, Bennett is an individual and the owner of USIC, a business entity. (Allen Third-Party Compl. ¶¶ 2–3, 8, ECF No. 22). For convenience, the Court will refer to Bennett and USIC together, as "Bennett/USIC," throughout this Order.

("TEA"),[2] which granted Allen "the necessary access to the worksite from another direction and over different land." (*Id.* ¶¶ 7–9). By accessing the worksite via the TEA, Allen alleges it completed the work on the railroad bridge. (*Id.* ¶ 9).

LJFP filed this case in Texas state court on November 2, 2016. Allen timely removed the case to this Court on December 6, 2016, based on diversity jurisdiction. In its First Amended Petition, LJFP claimed Allen violated the TCE by building an access road that was "materially different from the access road allowed by the [TCE]," constructing workspace on LJFP's property (rather than on the adjacent landowner's property), cutting timber from LJFP's property, and continuing to use LJFP's property after October 1, 2016. (LJFP First Am. Pet. ¶¶ 2.3–2.6). LJFP asserts trespass and breach of contract claims against Allen, and seeks exemplary damages. (*Id.* ¶¶ 3.1–3.3).

Allen asserts five counterclaims against LJFP: (1) breach of contract, (2) breach of warranty, (3) negligent misrepresentation, (4) statutory fraud, and (5) tortious interference with a business contract. (Allen Countercl. ¶¶ 12–21). The crux of Allen's breach of contract and breach of warranty claims is that LJFP breached the TCE because LJFP did not own the land covered by the TCE. In its tortious interference claim, Allen argues that LJFP interfered with the TEA, Allen's agreement with Bennett/USIC. As discussed in further detail below, Allen's negligent misrepresentation and statutory fraud claims are more difficult to articulate. Allen claims LJFP misrepresented "it owned the land necessary to gain access to [the] worksite," but it is not clear to which land Allen is referring. (*Id.* ¶ 5).

---

[2] In deciding a motion to dismiss under Rule 12(b)(6), the court may examine documents attached to a response to a motion to dismiss as long as the documents are also referenced in the complaint and their authenticity is undisputed. *Walch v. Adjutant Gen. Dep't*, 533 F.3d 289, 293–94 (5th Cir. 2008). Here, the TEA meets those criteria. Allen attached the TEA to his response to Bennett/USIC's Motion to Dismiss. (*See* Allen Resp. to Bennett/USIC's Mot. Dismiss Ex. B, ECF No. 49). Allen references the TEA in his complaint. (*See* Allen Third-Party Compl. ¶ 9). And Allen and Bennett/USIC agree the TEA is authentic. (*See* Allen Resp. Bennett/USIC's Mot. Dismiss ¶ 7; Bennett/USIC Answer ¶ 8, ECF No. 36). Thus, the Court may examine the TEA.

Allen also brings four causes of action against Bennett/USIC as a third-party defendant: (1) breach of contract, (2) promissory estoppel, (3) negligent misrepresentation, and (4) statutory fraud. (Allen Third-Party Compl. ¶¶ 14–21). The basis of Allen's breach of contract and promissory estoppel claims is that Bennett/USIC breached the TEA because Bennett/USIC did not own the land covered by the TEA. For its negligent misrepresentation and statutory fraud claims, Allen argues Bennett/USIC misrepresented that they owned the land covered by the TEA. In response, Bennett/USIC filed a declaratory judgment counterclaim under the Texas Uniform Declaratory Judgments Act (TUDJA), requesting a declaration of "the boundaries and applicability of [the TEA] as it affects Allen's right to assert causes of action against Bennett/USIC." (Bennett/USIC Countercl. ¶ 9, ECF No. 47).

There are three motions to dismiss pending: (1) LJFP's Motion to Dismiss Allen's counterclaims for negligent misrepresentation and statutory fraud; (2) Bennett/USIC's Motion to Dismiss Allen's claims for breach of contract, promissory estoppel, negligent misrepresentation, and statutory fraud; and (3) Allen's Motion to Dismiss Bennett/USIC's counterclaim for declaratory judgment. The Court will address each motion in turn.

## II. Legal Standards

### A. Rule 12(b)(6)

A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). The pleading standard Rule 8 announces does not require "detailed factual allegations," but it does demand more than an unadorned accusation devoid of factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its

face. *Twombly*, 550 U.S. at 570. The court must accept all of the plaintiff's factual allegations as true, but it is not bound to accept as true "a legal conclusion couched as a factual allegation." *Id*. at 555 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Where the facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has stopped short of showing that the pleader is plausibly entitled to relief. *Iqbal*, 556 U.S. at 678.

B.  **Rule 9(b)**

Parties alleging fraud must meet a heightened pleading standard. Rule 9(b) provides, in pertinent part, that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b). Articulating the elements of fraud with particularity "requires a plaintiff to specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams v. WMX Techs., Inc.*, 112 F.3d 175, 177 (5th Cir. 1997) (internal citation omitted); *U.S. ex rel Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud.") (internal citation omitted).

Further, "Rule 9(b) applies by its plain language to all [allegations] of fraud, whether they are part of a claim of fraud or not." *Lone Star Ladies Inv. Club v. Schlotzsky's Inc.*, 238 F.3d 363, 368 (5th Cir. 2001); *see also Benchmark Elecs., Inc. v. J.M. Huber Corp.*, 343 F.3d 719, 723 (5th Cir. 2003) ("Although Rule 9(b) by its terms does not apply to negligent misrepresentation claims, this court has applied the heightened pleading requirements when . . . fraud and negligent misrepresentation claims are based on the same set of alleged facts.").

5

### III. Analysis

#### A. LJFP's Motion to Dismiss

LJFP moves to dismiss two of Allen's five counterclaims. Specifically, LJFP asserts Allen's counterclaims for negligent misrepresentation and statutory fraud should be dismissed for failing to meet the pleading requirements of Rule 9(b) and Rule 12(b)(6). The Court agrees.

To plead fraud with particularity under Rule 9(b), Allen must allege the "'who, what, where, when, and how' of the alleged fraud." *Columbia/HCA Healthcare Corp.*, 125 F.3d at 903. This particularity standard applies to Allen's statutory fraud claim as well as Allen's negligent misrepresentation claim because the negligent misrepresentation claim is "based on the same set of alleged facts" as the statutory fraud claim. *Benchmark Elecs., Inc.* 343 F.3d at 723.

Allen alleges, "Acting under the representation from [LJFP] that it owned the land necessary to gain access to that worksite, Allen entered into [the TCE] with [LJFP, which] allowed Allen to enter upon certain property said to be owned by [LJFP] and necessary to access the above-described worksite." (Allen Counterclaim ¶ 5). Allen then cites a portion of the TCE, which states:

> TO HAVE AND TO HOLD the Construction Area unto the Grantee, its successors and assigns, for a Temporary Construction Easement, and the Grantor, for itself and its successors and assigns, does hereby covenant with the Grantee, its successors and assigns, that it is lawfully seized of the Construction Area, that the Construction Area is free from encumbrances which prevent Grantee's use thereof, and it has the good right and lawful authority to grant this Temporary Construction Easement.

(*Id.* ¶ 6).

While these statements satisfy the "who" requirement for pleading fraud, the "what," "where," "when," and "how" requirements are not met. Allen pleads LJFP was the entity that made the representation. (*Id*. ¶ 5). What LJFP allegedly represented, however, is less clear. Allen states LJFP represented "that it owned the land necessary to gain access to that worksite,"

6

but never defines the terms "land" or "worksite" in that phrase. Later, Allen defines the term "Land" as the land accessing the worksite that Bennett/USIC represented it owned. (*Id*. ¶ 8). Throughout the rest of its pleading, Allen continues to refer to "Land" as the land allegedly owned by Bennett/USIC and covered in the TEA. (*See id*. ¶ 9) ("Allen entered into [the TEA] with [Bennett/USIC] whereby those parties granted access on and over the Land to Allen . . . ."). Importantly, Allen does not use the term "Land" to refer to LJFP's representation "that it owned the land necessary to gain access to that worksite." Without a definition for the term "land" or "worksite," the Court cannot determine what LJFP represented to Allen. To satisfy Rule 9(b), Allen must specifically allege what land LJFP referred to when it represented to Allen that it "owned the land necessary to gain access to that worksite." Further, it is not apparent where or when LJFP made such representation. Allen must clarify whether LJFP made the representation in the TCE, during negotiations and discussions before the parties signed the TCE, or at a different time.

The biggest deficiency in Allen's pleadings, however, is the muddled allegation of how LJFP's representation was false. Allen argues LJFP's representation—that LJFP "owned the land necessary to gain access to that worksite"—was false because Bennett/USIC owned the "Land" subject to the TEA. (*Id*. ¶¶ 7–9). Yet, Allen's pleadings suggest "the land necessary to gain access to that worksite" and the "Land" are different. For instance, as noted above, Allen uses the term "Land" to refer to the land subject to the TEA, but not to refer to LJFP's representation that "it owned the land necessary to gain access to that worksite." (*Id*. ¶¶ 5, 7–8). Also, Allen explains that when it could not access the worksite through LJFP's land under the TCE, it entered into the TEA with Bennett/USIC "to gain the necessary access to the worksite

7

from another direction and over *different* land." (*Id*. ¶ 7) (emphasis added).³ If "the land necessary to gain access to that worksite" and the "Land" are different, Bennett/USIC's representation that it owned the "Land" does not make LJFP's representation that it owned "the land necessary to gain access to that worksite" false. To add to the confusion, Allen later insinuates that LJFP's land covered in the TCE and Bennett/USIC's land covered in the TEA was the same or, at the very least, overlapping: "[LJFP] caused Allen's work to be halted on [Bennett/USIC's] property by representing to law enforcement and others that [LJFP], not [Bennett/USIC], owned the Land." (Allen Countercl. ¶ 10).

For these reasons, the Court finds Allen's fraud allegations against LJFP fall short of the particularity requirements of Rule 9(b). The Court **DISMISSES WITHOUT PREJUDICE** Allen's negligent misrepresentation and statutory fraud claims. Allen may replead within twenty days of the date of this Order in an effort to correct the pleading deficiencies for these claims.⁴

### B. Bennett/USIC's Motion to Dismiss

Bennett/USIC moves to dismiss all of Allen's claims. Specifically, Bennett/USIC asserts that Allen's breach of contract and promissory estoppel claims should be dismissed for failure to state a claim under Rule 12(b)(6), and that Allen's negligent misrepresentation and statutory fraud claims should be dismissed for failure to plead with particularity in accordance with Rule 9(b) and for failure to state a claim under Rule 12(b)(6). The Court finds, however, that Allen's

---

³ Notably, both LJFP and Bennett/USIC claim the land covered in the TCE and the land covered in the TEA are different. (*See* LJFP Reply Mot. Dismiss ¶¶ 5, 10, ECF No. 41) ("None of the property covered by the [TEA] between [Bennett/USIC] and Allen is or could be the property covered by the [TCE] between LJFP and Allen."); (Bennett/USIC Countercl. ¶¶ 4–5) (The property identified in the TEA "was and is located completely on the *south* side of Chambers Creek . . ." whereas "Allen entered the property of LJFP on the *north* side of Chambers Creek . . . .").

⁴ In its Response to LJFP's Motion to Dismiss, Allen requested leave to replead and attached a proposed Amended Original Counterclaim. Because this Amended Original Counterclaim does not cure all of the pleading defects discussed in this Order, Allen should file a new version of its amended counterclaims if it chooses to replead.

breach of contract and promissory estoppel claims satisfy Rule 12(b)(6) and that Allen's negligent misrepresentation and statutory fraud claims satisfy Rules 9(b) and 12(b)(6).

### i. Breach of Contract

The essential elements of a breach of contract claim in Texas are: (1) the existence of a valid contract; (2) breach of the contract by the defendant; (3) performance or tendered performance by the plaintiff; and (4) damages sustained by the plaintiff as a result of the defendant's breach. *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (internal citation omitted).

Here, Allen pleads it "entered into [the TEA] with [Bennett/USIC] whereby [Bennett/USIC] granted access on and over the Land to Allen [ ] in exchange for a fee, which Allen [ ] paid pursuant to [the TEA]." (Allen Third-Party Compl. ¶ 9). Allen also states that if LJFP "proves that it has superior title to and ownership of the Land . . . ," Bennett/USIC breached the TEA, since, in the TEA, Bennett/USIC granted access on and over the "Land" to Allen. (*Id*. ¶ 12–13). Last, Allen claims it suffered damages "in terms of leased equipment and lost labor time" when LJFP temporarily halted Allen's work on the "Land" and will suffer damages for "any [potential] judgment obtained by [LJFP] against Allen . . . ." (*Id*. ¶¶ 10, 13). These allegations are sufficient to assert a breach of contract claim under Rule 12(b)(6).

### ii. Promissory Estoppel

Allen's promissory estoppel claim also satisfies Rule 12(b)(6). In Texas, promissory estoppel requires (1) a promise, (2) foreseeability of reliance by the promisor, and (3) substantial reliance by the promisee to his detriment. *English v. Fischer*, 660 S.W.2d 521, 524 (Tex. 1983). First, Allen alleges a promise exists: "Bennett represented that he, through his company [USIC], owned the land necessary to gain access to the worksite (the 'Land')" and "granted access on and

over the Land to Allen . . . ." (Allen Third-Party Compl. ¶¶ 8–9). Second, Allen claims it was foreseeable Allen would rely on Bennett/USIC's promise to grant access on and over the "Land." (*Id*. ¶¶ 9–12). Third, Allen alleges it relied on Bennett/USIC's promise that Bennett/USIC owned the "Land" when Allen "utilized the access on and over the Land, and ultimately completed its work at the worksite." (*Id.*). Based on these allegations, Allen's promissory estoppel claim satisfies Rule 12(b)(6).

### iii. Negligent Misrepresentation

Allen's negligent misrepresentation claim against Bennett/USIC satisfies both Rule 9(b) and Rule 12(b)(6). Under Rule 9(b), Allen must allege the "'who, what, where, when, and how' of the alleged fraud." *Columbia/HCA Healthcare Corp.*, 125 F.3d at 903. This particularity standard applies to Allen's statutory fraud claim as well as Allen's negligent misrepresentation claim because the negligent misrepresentation claim is "based on the same set of alleged facts" as the statutory fraud claim. *Benchmark Elecs., Inc.* 343 F.3d at 723.

Here, Allen pleads the "who, what, where, when, and how" with regard to its negligent misrepresentation claim against Bennett/USIC. Allen states Bennett/USIC represented Bennett/USIC "owned the land necessary to gain access to the worksite (the 'Land')." (*Id.*). Allen explains "Land" refers to the land covered in the TEA. (*Id.* ¶ 9). Further, Allen pleads Bennett/USIC made the representation "[w]hen contacted" and the representation "was supported by deeds and other documents." (*Id.* ¶ 8). Allen also explains how Bennett/USIC's representation was false. Allen states Bennett/USIC's representation—that it owned the "Land" covered by the TEA—was false because LJFP told law enforcement that LJFP owned the "Land." (*Id.* ¶ 10). Thus, Allen's negligent misrepresentation claim satisfies Rule 9(b).

Allen's negligent misrepresentation claim also meets Rule 12(b)'s pleading standard. A claim for negligent misrepresentation under Texas law requires proof of four elements: (1) the defendant made a representation in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplied false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation. *Gen. Elec. Capital Corp. v. Posey*, 415 F.3d 391, 395–96 (5th Cir. 2005). Allen alleges the following: Bennett/USIC represented it owned the "Land," during discussions regarding the TEA; Bennett/USIC's representation led Allen to conclude Bennett/USIC had the right and authority to grant Allen access on and over the "Land"; the representation was false because LJFP told law enforcement LJFP owned the "Land"; and because of Bennett/USIC's false representation, and Allen suffered loss and damages when LJFP halted Allen's work on the "Land." (Allen Third-Party Compl. ¶¶ 7–12, 18–19). These factual allegations are sufficient to assert a negligent misrepresentation claim under Rule 12(b)(6).

### iv. Statutory Fraud

Allen's claim for statutory fraud under Texas Business and Commerce Code § 27.01 also satisfies Rules 9(b) and 12(b)(6). Allen's fraud allegations against Bennett/USIC involve the same misrepresentations as its negligent misrepresentation allegations. Thus, based on the analysis above, Allen's statutory fraud claim meets Rule 9(b)'s heightened "who, what, when, where, and how" pleading standard.

In addition, Allen's statutory fraud claim satisfies Rule 12(b)(6). In Texas, statutory fraud occurs in a real estate transaction when a party makes a "false representation of a past or existing material fact" in order to "induc[e] [a] person to enter into a contract," and the person

11

relies on this false representation "in entering into that contract." *See* TEX. BUS. & COM. CODE § 27.01(a). Allen alleges Bennett/USIC falsely represented it owned the "Land" during the discussions and negotiations leading up to the execution of the TEA. (Allen Third-Party Compl. ¶¶ 7–12, 20–21). Further, Allen claims because of this false representation, Allen entered into the TEA with Bennett/USIC to gain access on and over the "Land." (*Id.*) These allegations satisfy Rule 12(b)(6)'s pleading standard for a § 27.01 fraud claim.

For these reasons, the Court finds Allen properly pleaded its breach of contract, promissory estoppel, negligent misrepresentation, and statutory fraud claims. Bennett/USIC's Motion to Dismiss is therefore **DENIED**.

### C. Allen's Motion to Dismiss

Bennett/USIC asserts a counterclaim against Allen, seeking a declaration of "the boundaries and applicability of [the TEA] as it affects Allen's right to assert causes of action against Bennett/USIC." (Bennett/USIC Countercl. ¶ 9). Bennett/USIC also requests attorney's fees under § 37.009 of the Texas Civil Practice and Remedies Code. (*Id.* ¶ 10). Allen moves to dismiss Bennett/USIC's counterclaim for declaratory judgment because it presents no new controversy and seeks only to resolve disputes already pending before the Court. (Allen Br. Supp. Mot. Dismiss ¶¶ 8–14, ECF No. 51).

The Court finds Bennett/USIC's declaratory judgment request under the TUDJA fails to state a claim upon which relief can be granted. In general, "[a] declaratory judgment is unavailable to resolve disputes already pending before the court." *Albritton Props. v. Am. Empire Surplus Lines*, No. 3:04-CV-2531-P, 2005 WL 975423, at *2 (N.D. Tex. Apr. 25, 2005) (internal quotation omitted.). Thus, to be proper, a defendant's counterclaim for declaratory judgment must have "greater ramifications than the original suit." *Id*. To have "greater

ramifications," a declaratory judgment counterclaim must "seek affirmative relief" and "do more than merely deny the plaintiff's claim." *Id.* A counterclaim seeks affirmative relief "if the defendant asserts that it has an independent cause of action, such that even if the plaintiff abandoned or failed to establish its cause of action, the defendant could still recover benefits, compensation, or relief on the counterclaim." *Id.*

Bennett/USIC's request for "a declaration of the boundaries and applicability of [the TEA] as it affects Allen's right to assert causes of action against Bennett/USIC" has no "greater ramifications" than Allen's original suit. Allen's breach of contract, promissory estoppel, negligent misrepresentation, and statutory fraud claims against Bennett/USIC require the Court to determine whether Bennett/USIC is liable under the TEA. Similarly, Bennett/USIC's declaratory judgment counterclaim asks the Court to declare whether the TEA provides a basis for Allen's causes of action against Bennett/USIC. A determination of this counterclaim would simply duplicate Allen's original claims against Bennett/USIC. What's more, if Allen's original claims failed, Bennett/USIC could not recover on its counterclaim alone, as Allen's "right to assert causes of action against Bennett/USIC" would have already been decided.

In addition, the Court denies Bennett/USIC's request for attorney's fees under § 37.009. The Fifth Circuit has stated that the TUJDA's provision for attorney's fees "functions solely as a procedural mechanism," not as substantive law. *Utica Lloyd's of Tex. v. Mitchell*, 138 F.3d 208, 210 (5th Cir. 1998). Because federal procedural law applies in diversity cases, the Fifth Circuit concluded, "[a] party may not rely on the [TUDJA] to authorize attorney's fees in a diversity case . . . ." *Id.*; *see also Camacho v. Tex. Workforce Com'n*, 445 F.3d 407, 410 (5th Cir. 2006) (noting that *UticaLloyd's of Texas* is still "good law"). Thus, Bennett/USIC cannot rely on the TUDJA to authorize attorney's fees in this case.

13

For the reasons stated above, Bennett/USIC's declaratory judgment counterclaim is **DISMISSED WITH PREJUDICE**.

IV. **Conclusion**

In sum, LJFP's Motion to Dismiss (ECF No. 34) is **GRANTED**. Allen's negligent misrepresentation and statutory fraud claims against LJFP are **DISMISSED WITHOUT PREJUDICE**. Allen may replead within twenty days of the date of this Order in an effort to correct the pleading deficiencies for these claims.

Bennett/USIC's Motion to Dismiss (ECF No. 46) is **DENIED**.

Allen's Motion to Dismiss (ECF No. 50) is **GRANTED**. Bennett/USIC's declaratory judgment claim against Allen is **DISMISSED WITH PREJUDICE**.

**SO ORDERED**.

December 18, 2017.

_____
**BARBARA M. G. LYNN
CHIEF JUDGE**